the Narrow Legal Issue we present in this appeal, and one which RARE obviously would prefer that the Court not reach, is one of law, and it is whether RARE's matured obligation to lease an out parcel from HDRE was validly or could validly and legally be substituted for its obligation to pay HDRE $210,000 as a finder's fee if, and this is important, only if, RARE decided to continue and purchase the property from the property owner. That is a suspensive condition, and indeed a condition that will be satisfied only at the will of the obligor. What about the agreement, the assignment agreement, wasn't that completed when it was agreed to? Whether or not the purchase actually was going to occur? Your Honor, the assignment itself, and I see my clock is not running, the assignment itself is unconditional from us to HDRE, I'm sorry, from HDRE to RARE of the right to purchase the property, but that's irrelevant. The question here is the obligation that was owed from RARE to HDRE. The lease obligation from us to RARE in the original lease agreement was unconditional as well. The question that Louisiana law poses, and everyone's law poses, for a party who is affirmatively seeking the defense of novation, is whether you have substituted a valid and enforceable contract for the existing contract. Let me ask you a question to more narrowly focus the issue. I think our question here strikes me as although we have a situation where although the parties intended a novation, and that's a settled issue because of the jury finding, as a matter of law, the underlying agreement itself was a condition of the obligation, not of an item of performance. Your Honor, I'm with you all the way to the last part of your question. I figured you'd get off the bus about that time. What do you say? I agree with you that the parties clearly intended at the time they executed the one document that affects the assignment of our right to purchase the property from the property owner to RARE that they would do that. Now, the original panel opinion, the per curiam opinion in this case, noted that it's possible that RARE was trying to keep both options open for itself because what's critical here as a factual matter to the point that you raised, Judge Gumbotham, is that from our side we were quite content, obviously, to purchase and lease the property. From their side, their own internal analysis showed that the lease at net present value was $1.48 million or so, and they didn't want to do that. They shifted very late in the process to this idea of they'll purchase the property instead. We executed this document that assigned our right to purchase to them. In return, what we got was an obligation, and we have to have an obligation coming from to have a valid novation under Louisiana law, and that obligation, their insistence was subject to their going forward and purchasing the property. Notably, we had proposed an unconditional complete novation by which they would simply pay $210,000 in that assignment agreement as a finder's fee to us. They refused that. If they had wanted to go forward on that basis, they wouldn't have the problem that they have now of all roads leading back to the question of whether they had a valid and enforceable notwithstanding the presence of a massive, suspensive condition in that assignment agreement, which was namely that the obligation to pay HDRE the $210,000 would be live only if they decided to go forward and purchase the property. They decided not to purchase the property, and that condition was never satisfied. As a matter of Louisiana law, that cannot validly novate the existing obligation. I've got an item of performance rather than the obligation. The purchasing obligation in the Louisiana—as you know, I'm a Texas lawyer trying to speak Louisiana civil code here. I have to depend on my colleagues here. It's just like contracts. Well, it sounds to me just like the condition preceding, but whatever. As I understand it, there is a distinction between the overarching obligation itself and in which they have to be unconditional. But in those kinds of contracts, there are going to be items of performance, which in themselves will have conditions and items of performance. As I've read that Professor Litvinoff, that's what he was—drew that distinction. I think so. Your Honor, I think if we can dive deeper into the code, I think what we're getting at is there are two types of obligations, or at least two types. We can cut them up into many different ways. There are suspensive obligations and there are conditional obligations that are resolutory. Now, a suspensive obligation that is subject to the will of the obligeur, what used to be called a protestative condition, those were present in both of the agreements at the outset. The critical thing is everyone agrees that by May 9th of 2008, that condition, the suspensive condition in the lease agreement, was gone. So we move to a new contract, which is between all three parties and has performance conditions in it, one of which could be they go forward and they purchase the property. But what is the obligation to my client in that new contract? The answer is the obligation is to pay it $210,000 upon closing on the purchase of the property, the assigned right to purchase the property. Because they insisted on that condition being in place under Louisiana Civil Code Article 1770, they've got a problem. The novation argument is subject to a suspensive condition that depends solely on the whim of the obligeur. So at that point, arguably that entire contract is a nothing from our perspective until they actually satisfy the condition. But regardless of how you want to look at that obligation, whether it was a resolutory or a suspensive condition, it wasn't satisfied. And Litvinov and the Tucker opinion and other authority controlling, we would suggest, governing Louisiana law in those circumstances, suggests that you cannot therefore have a novation of an existing valid agreement. So what we get then is, and it's the simplest way to look at this case, and it really is quite a simple problem, take yourself back to May 28, 2008. They've decided they don't want to purchase the property. First, they wanted to lease it, then they wanted to purchase, now they don't want to purchase it. So they say, we're not going forward with the purchase. Our client comes in. What should have happened at that point, in your view? What exactly, the next thing that happened, which was our client saying, we're ready, willing, and able to proceed under the lease that's subject to your potential novation argument. And their other side, critically, comes back with... Was there an obligation of Sterling to sell the property at that juncture? Yes. Yes. In fact, that's stipulation number 16 in the trial court, that the property was still available. First of all, the property was still available to be purchased to anyone, including HDRE. Their own brief answers that question. Before the assignment took place, the contract between Sterling and HDRE was extended to allow the closing to go until June 6th. You say that Sterling remained obligated to sell that property to one of the other two parties throughout the transactions. That's right. Obligated to sell. It would be the same analysis, because there's the same suspensive condition. Didn't Sterling draw down money from the title company? I'm sorry? Didn't Sterling draw down money from the title company? Yes, I believe that's right. What was that money for? There was a $25,000 refundable deposit from RARE with the title company. Sterling already had $75,000 of ours to preserve our right to purchase the property. Sterling's obligation to sell it to them was subject to the same suspensive condition as their obligation to pay us upon the sale. When they decided they didn't want to go forward, the same arguments would obtain with respect to our right to go to Sterling and say we want to proceed. The no-vating document contained a suspensive condition, and that condition wasn't fulfilled. Has Sterling gone forward on a suit to command performance of a purchase of real estate? They could have if they retained that right throughout the series of the assignments. My position, which I put to you in a footnote, footnote 5 of our opening brief, was the original purchase contract between HDRE and Sterling contained options for remedies, including specific performance or retention of deposits. As we went through these series of extensions to allow RARE to stroke its chin for a few more weeks, those remedies turned into retaining the deposits. Sterling already had the deposits in hand at the time that the suspensive condition as to both the purchase and to the obligation to pay us went away. At that point, what we do is our client sends a communication back and says, okay, you had this contract that was subject to a suspensive condition subject to your own will. You've decided not to proceed on it. The lease is still out there. The period for you to walk away from the lease on the same no-reason basis. It's not clear what your answer is. Could Sterling have compelled one of these two parties? We're talking about which one now. One of them to purchase the property. Ordinarily, you can command performance of a contract to purchase real estate. The common law principle, I think that's still the same in Louisiana. Yes, Your Honor. Sterling had the right. My concern, did they have that, did they, Sterling, have that right? Well, they certainly argued that they did because they said that at the time of the What's your position? My position is Sterling had selected a remedy as against us before the assignment was executed, which was retention of the deposits. Sterling had that right as of the time that the amendment and assignment was executed. If I'm following you, your position is that Sterling has lost some of its right. It's lost its right to compel a performance of that contract. Before the assignment. Because Sterling had elected as a remedy in those extension agreements, retention of deposits as against us. As against them, we still have the right to insist on continued performance from them when the assignment agreement failed. And we went forward, and in any event, Judge, Stipulation 16 of the record is the property was still there for us to purchase if we wanted to purchase it. So, May 28th, they say we didn't get our consent, we're not going to buy the property. May 30, our guys say, well, good news. The lease is still open, and in your own brief, you acknowledge the point. We have until June 6 to close. We want to go forward. Now, this is where at some point, everybody has to declare a major, right? I mean, time runs away from you. Eventually, you're forced to take a position. And they take the position. They say the contract's dead. The contract merged, impossibility, confusion, novation, et cetera. They have to win on that argument, because they've refused to perform from that point going forward. That's what the jury found, correct? I'm sorry? That's what the jury found, that that was the intention. The intention was to novate. Yes. But that's sort of divorced from the context of the legal question that's presented here, and the argument that was presented repeatedly by my client to the judge in the district court, which was, to be clear, legal contention number one in the joint pretrial order, which the judge adopted, was that this novating obligation was subject to a suspensive condition that was never satisfied. The judge just ruled— The prior panel decision didn't just danced around that? That wasn't presented to the prior panel? That was not presented to the prior panel. And hence, that's the argument— Because in the majority opinion, it looks like it's assumed. That there was intention, or that it was— No, not that there was intention, but that, in fact, the question going back was whether or not novation existed factually. Factually. I agree with you, Your Honor. But that's a critical—it's a necessary but not sufficient condition to have a valid novation. In the assignment agreement, did the payment to the title, the $25,000, that was an unconditional obligation that was assumed and paid even though it was refundable? Is that correct? By rare to sterling. Yes. Yes. Okay, so you do have a bundle of rights and duties where some, one you're saying was permissive and other was unconditional. Is that fair to say? Yes. I think in fairness, under Louisiana law, you would have obligations which are primary or principal and you would have ancillary obligations. The simple reality here is sterling owned land. It wanted to sell it to somebody. It didn't want to lease it. Sterling agreed to lease it to us because HDRE—I'm sorry. Yeah, we know those facts. Yeah. But legally, where does that get you? Because when you look at the first obligation, it seems like it's permissive also. The lease depends on getting permits. So there's conditionality there, too. Yes. Yes, there was. But that is a different kind of obligation. That's a resolutory obligation. Okay. And critically, they didn't say—and this is why I want to get back to that moment. At the end of May, there's still time to go forward and buy the property. They didn't say, we can't get a permit. We're not going to be able to get a permit. What they said first was the contract is dead. And if you have a resolutory condition that depends solely on the will of the obligor, as they would say— Yes, but on that point, which ties to your nullity argument, isn't it true that the comments to 1770 indicate that you don't have a whim if what's at stake is a contract with a third party to purchase property? You don't have—I'm sorry. It isn't perceived to be a whim and a nullity. That's fine. But the point is, first of all, the jury didn't answer the permit question. It never got to that question. But the permit question is—the permit issue doesn't come up until they've already exercised the suspensive condition or refused to allow it to be satisfied on our performance. They've killed the contract. At that point, they've repudiated. And if we were going forward on a permit condition, I don't think we ever should or would, because, first of all, the jury didn't answer it. That would have to be fulfilled in good faith. And there's no evidence in the record that says anything other than the fact that they simply stopped trying because they've reviewed the contract instead. And I see that I'd like to— He's saying some rebuttal time. Mr. Johnson. May it please the Court. I'm Alston Johnson. I'm here today with Brian Bennett, who was the trial counsel, Nick Shannon, who was the oral advocate the first time this case was up here on behalf of Rare Hospitality. Judge Higginson, I want to start with where you were, because that's where I was going to start, and I'm glad that you have already paved that way. Because here's a fundamental problem with the other side's argument. They really have two arguments based on this whim or corporate approval. One is it's a suspensive condition that didn't get fulfilled, and the other is, well, you don't have a contract at all because there was no serious promise to do that. But the comment that you've focused on is entirely correct. Judge Clement will remember a lot about potestative conditions from her law school days, and that it was a little difficult, and it meant only power. Was it within your power to do something? And when we got to the revisions in the middle 80s, you'll notice that in 1770, and this is a word that my colleague across the table has used, it's the, quote, whim of the obligor. And there was an intent, and the Litvinoff Treatise, by the way, which is well cited by the other side, I would commend to the Court that you go back and look at another piece of Professor Litvinoff's Treatise, which is Section 5.6, in which he talks about the difference between whim and will, and you notice that those words are used in 1770 differently, but the question is whether or not all things dependent upon will are simply whim or fancy. That was never the case under the prior code, which was Article 2035 about potestative condition, and this has intended, this amendment was intended to draw that out, and that's what the footnote is about, I mean the comment, it's Comment D that you were thinking about, and Comment E as well, and Comment D has a sentence in it which is, it's as if it were written for this case. D says, an event which is left to the obligor's whim is one whose occurrence depends entirely on his will, such as his wishing or not wishing something. Next sentence, an event is not left to an obligor's whim, and therefore doesn't satisfy this criterion on this side of the table when it is one that he may or may not bring about after a considered weighing of interest, an event such as his entering a contract with a third party, which is precisely the point that you made. So the question in this fundamental, this is where, as you know, having read these briefs, this is the whole argument from the other side of the table, is that this corporate approval business is solely their whim. Well, it's not, because it's a considered reasonable decision to be made, and the interesting thing is that in this transcript, when you listen to the testimony of the individuals from our side of the table, they tell you about the $80,000 that they've put out that they're not going to get back if they don't go forward, they're making these decisions for the shareholders, there's a long set of unrebutted testimony about we're not doing this on, quote, whim or fancy, but rather on the basis of a considered decision. Now, notice also in comment D, and by the way, Professor Litvinoff elaborates on this in section 5.6, because he wrote the comments and then expanded them into the treatise, but there's a case cited there that I think is a Supreme Court case, which the court will find interesting if you go back and look at it, it's the Humble Oil case, the citation of which is in comment D. Humble Oil is a case in which the Louisiana Supreme Court goes through exactly this dichotomy, because it involved the question of the transfer of an interest by somebody in future leases, and I'm going to paraphrase, obviously it's more complicated than that because it's in a mineral lease, but what it says is, tell you what, I'm going to give you a royalty in any future of such and such in any future mineral leases that I may make, and so the argument which was made against that was, well, whether or not this fellow ever decides to lease or not is entirely up to him, so this can't be any binding agreement. But the Louisiana Supreme Court in the Humble Oil case said, no, that's not what the court said, because he's going to have to forego royalties and bonus payments and all these other things, he's not going to decide not to lease just to frustrate the interest of the other party, and that's exactly this situation. You go back and read Humble Oil, you'll see exactly a pattern that is like this one, and that is that when there is an event out there, which yes, it takes the will of rare to decide to buy or not, there's no question about that, but remember this first piece of 1770 doesn't say will, it says whim, and then the explanation is, if you're just doing it, as Litvinoff says, according to your fancy, the example, the ancient example that they give, and it comes from Poitier or Planiol or somebody, the ancient example is I'll sell you my house if I move to Paris. Well, whether you move to Paris or not is entirely up to you, but it's not a free decision, it's not whim, because if you do decide to move to Paris, which we think you'll probably do for other reasons, like as they say, to take a position there or go to school there or whatever, then you're bound to sell the house. That's clarifying, and I understand that. Stepping just back to Judge Foote's ruling, are you defending her ruling, and am I characterizing correctly when she says that this assignment agreement was not conditional, with the implication being that had it been conditional, it couldn't novate? Is that your primary position, or is your position that it could be conditional, and it would still novate, and it was conditional? I suppose it's more of the latter, but I think we're saying the same thing, I think, is what she intended to say. I think what she intended, what she meant by that was, it can't be the kind of condition, it is not the kind of condition, that will nullify the obligation. She didn't go into this detail, but she understood it. And is that, definitely correct me if I'm wrong, because I may be oversimplifying, but is it not that tight under our case law that I think both parties cited to Langhoff, in that what you're looking at is the larger relationship, and whether one replaces the other, and that relationship can have from it duties and rights that flow that are conditional or unconditional. I think that's all accurate. I would say Langhoff is not going to help you very much, because in Langhoff, as I read the case, it's a situation where the first, let me call it the old obligation, had actually come to an end, and there was a, quote, new obligation, and what this court said in its opinion was, there's nothing to- That's the primary ruling. Yeah, but that's not, Langhoff is not going to help you, I mean, it's got a lot of platitudes in it, I don't mean that in a derogatory sense, but there was nothing there to novate, that's what Langhoff is about. I think the better example of what we're talking about is the Humble Oil case, which is, not Placid, that's something else, and I'm going to talk about that. Humble Oil, which is in the comment D, is the one I would commend to the court. While you mentioned Placid Oil, let me talk about that for a minute. I was a little surprised that the other side cited, this is Placid Oil versus Taylor, I think is the name of the case, and it involves mineral leases, I guess that's what we mostly argue about, because that's where the money is. It involves mineral leases, and it's a question of whether a newer lease with a 1 4th royalty was a novation of one which had a 1 8th royalty, and it's the oil company arguing this, because they want to cut the royalty back to the 1 8th, and I'm simplifying, you'll see when you read it. And what happened in the new obligation, or the allegedly new obligation, was that that was silent on what they were going to do about the old one, and the first time that that Louisiana Court of Appeal dealt with the issue, and that's the one that the other parties cite is the first opinion, they seem to think silence meant there could not possibly be a novation. The Supreme Court reversed that, sent the case back down, and the last opinion, which I think is at 3 25 Southern 2nd, the site is in there, is the reverse, in which the think that if the parties had meant for the old lease and the 8th in there to carry forward, they would have said something about it, and they didn't. And so we've decided there is a novation. Now, why is that significant here? It's significant here because this third agreement that the parties talk about, amendment and assignment, is silent on the point of what's going to happen to the lease. Now, I ask you this. In that sense, it's very different than the decision they primarily rely on, the Tucker decision. It is. And Tucker is... You have a clear novation principle, and then you have a condition, and if that condition isn't met, then of course, no. Correct. And that one, I think, is fine. That's uncontroversial. As far as it goes, that's fine. But this is a situation in which there was silence, and part of your question, I think, to grapple with here is, who is now going to bear, who's going to take the fall for the fact that the third contract is not quite as clear as we might all have written it now? What would have kept, for example, HDRE, which apparently had decided, you remember, from the briefing, that the lease had gone hard. That's the phrase. On May the 9th, 2008, it had gone hard. So they're negotiating about this $210,000 of the assignment and all that, and remember that the first version, which was drafted by HDRE's attorney, would have had our side paying $210,000 upon the assignment, never mind whether you ever purchased. That's the draft that they sent us. Pay me $210,000 when I assign. And we said, in effect, I take it, you know, we're still working on the numbers. We're not sure that's going to work. We want a week after we sign this, May 23rd, to decide. Was it disputed by both sides that had you signed that, it would have novated the lease? There's testimony by Mr. Dingler in the contract that he put forward, he being his lawyer, with pay me immediately. There's testimony in the record that he believed the lease was gone at that point. Now, we said, we don't think we can do that. We're still working on the numbers. So imagine this situation now, because it could well be the case. They know now the lease has, quote, gone hard, May the 9th. And so it seems to me what they're trying to accomplish is exactly what they couldn't accomplish through the $210,000 upon assignment. Because they figure, hey, we're going to get the $210,000 if they purchase, and we're going to get the lease if they don't purchase. Isn't this great? Now, I ask you, if HDRE had decided to put that in the third contract, it said, now, everybody aware now, what happens here is the lease is still going to be good. What difference does all this make? You've got a jury finding that the parties intended a novation. The argument just turned strictly on the characterization of these obligations. I understand that. I'm getting ready to tell you why. That's exactly where I was headed. All right, I'll get ready to listen. I appreciate that. If I can get back to my train of thought for doing that. The point was they didn't put that in. They didn't say, hey, how about we put in this thing? Because you have to figure, our team would never have signed that if they said, we need you to understand the lease is hard. Now, what would have kept HDRE from putting that in that draft? And what is the effect of their signing? Here's the legal argument, Judge Higginbotham. What is the effect of their signing the agreement? Well negotiated. And the agreement is silent on this point about the lease being hard. They signed, and remember, and I know Judge Clement will remember this from her law school days. There's an old case in Louisiana that says signatures on contracts are not mere ornaments. They mean something. So here's HDR being advised by its counsel, and it's silent on that point. And I ask you, my colleague when he was up here talked about contracts that would be performed in good faith. Article 1983 of the Civil Code says that. Is it in good faith to leave that out? But that is your basic argument. That really doesn't, the case doesn't just turn on the performance of the parties or not. That, to the extent it's relevant, would be, under your argument, whether they intended an ovation. You got that done. That's the one side. The question is, given these instruments, we have a purely legal question as to the characterization of this in Louisiana law. What am I missing? No, you're not missing anything. And the only reason I brought up the Placid Oil business was because I think in the equity of this, and I understand we're talking law, but let me finish the equity part. Somebody is going to have to take the fall for this silence in the Louisiana cases. Placid in particular, Judge Higginson. Placid really says, in effect, yeah, the silence can produce an ovation because it can be not just what they express. It can also be the context. And I understand the legal, I don't want to lose you on the legal point because I understand what you're, as a lawyer, you want us to, you really ought to win that collaboration in the background. But these parties all well represented their business decision. It is what it is, and there's no unfairness. The law is what it is. I'm happy to hear your argument about fairness, but I just want to be clear that it doesn't seem that much to do with a legal argument. Well, and I'm here, and I think I've spent most of my time on the legal argument, is the WHM and the other contract and all that. And that's really where I wanted to spend most of my time, but since Judge Higginson mentioned Placid, there's a place on my notes where I could talk about Placid. I appreciate that. So, I encourage the court to do this. I encourage the court to look at 1770 very carefully. I encourage the court to look at Cummins' D&E. I encourage the court to look back at Humble Oil. And in each of those instances, you will see, and the discussion that Lipinoff has, you will see that the two major arguments that are virtually the entirety of the brief on the other side, which is, look, this was a, shall I say, invalidating, suspensive condition. It's not under the Code. And that there was no serious intent to be bound in the new obligation either. Both of those arguments are undermined completely by understanding what WHM means in the context of the Civil Code. And one of you asked, I've forgotten which one, but one of you asked, well, what about the fact that the ground lease had, I think it was you, Judge Higginson, you said something about the permit period and the conditional ground lease. I want you to be aware that in the feasibility period, which came first in the ground lease, one of the conditions was, RARE's got to get corporate approval to lease. It's the same one. Now, with respect to this second argument about there's no serious intent to be bound, where does it get the other side to get you to rule that when it says, got to get corporate approval, there's no serious intent to be bound? Doesn't that mean that the lease that they're here trying to enforce, which has the same thing in it, is going to undermine the enforceability of that argument as well? If it's the kind of corporate approval that's in the feasibility period, if it's the kind of corporate approval that's just a WHM, well, it invalidates the ground lease, too. I don't know what there is to enforce. I don't know where that gets them. And, of course, the reason why it doesn't get them anywhere is because that's not what Article 1770 means, and it's not what the Louisiana cases mean, and they talk about that. If that analysis is correct as to invalidation and WHM, what's your larger viewpoint of the state of Louisiana law on whether a conditional obligation can ever novate an unconditional one? Is that an issue that's ambiguous in the case law or not? No, but it's all in the definition of condition. You've got to, I mean, I know you've read all those cases, so, I mean, I think it's accurate to say if it's truly conditional to the point that it's one of those potestative, old potestative conditions that's now talked about in 1770, then that won't do. Now, we don't always put the adjective in there, but when you read all this together, as you know you're supposed to do, then it's one of those conditions. If it's one that would invalidate the obligation, and remember, that's what 1770 says. It depends solely on the WHM. It makes the obligation null. Well, if it's one of those, yes, that's the kind of condition that would do that. If it's not one of those, then it's not one of those. It's just too long, I think, for judges to say that all in one breath. Now, a couple points in closing. I only have a little over two minutes. If the court affirms this judgment as it is before you, you would thereby, and I apologize to everybody for sticking this in here, you would respect the jury's conclusion on the party's unequivocal intent. Let's not forget, and you've all said, that seems to be off the table. Did they intend to do that? The question is, could they legally accomplish that? But if you reject the plaintiff's legal argument here, then the case is at an end. We've had multiple trips up here. The case is at an end, except for the attorney's fees. If somehow you don't accept our side, and you accept their side, then what's going to happen is the case is going to have to be remanded back to the trial court for the jury, a new jury, I guess, to answer those four questions that it didn't answer on the jury verdict form. The jury verdict form, remember, has got one question on novation. It's got four on did you breach the lease. Well, you don't need to get to these if there's no lease. If you say there is a lease, well, we've got to go back and try this again and get the answers to the breach of lease questions. And I would simply ask the court to be a little wary of accepting this theory on the other side. The jury, for the factual point, Judge Higginbotham, the jury understood this. They were asked a question. It's a very simple question, and they answered it. The law should be wary of concocting a theory here that's ultimately going to contradict the jury's view from a legal standpoint, not a factual standpoint. I understand that. But Louisiana law, to me, is clear on this whim versus burdensome, reasonable decision. Who framed the question for the court? Come from counsel? I assume the parties did it together. The two trial counselors are sitting at the table, so I'm not right about that. Why did you phrase the question as it was, question number one, which then was a cushion following that, which hung it all on intent? Well, I think if the answer to the first question, Judge Higginbotham, by the jury was, no, we don't think you replaced that lease. Well, then you have to answer the other four questions. Okay, you have a lease. Did you breach it? What's the damages? Are there defenses? The way that Rule 49 submission is written, as I understand it in this case, is question number one is the overarching question of intent. When they've answered that question that the parties intended an ovation, then they don't answer any of the damage questions, which says that at least at trial the understanding was that that was a controlling question. Correct, and what they haven't answered yet is because of the lease. Who put that issue to the jury? I mean, everybody agreed to do that? There were any objections to framing it that way? I think the answer to that is no objections. Wasn't that the remand from the panel? We interpret the panels, and the panel's opinion, I think, is reasonably clear on the point. Because when it was argued the first time, it was, hey, intent is not good for summary judgment. These folks got to testify, counsel for the other side, and all that. Let's go back, and they all did that. They got a jury. They didn't have a jury. They didn't probably like what Judge Foote was telling them, so they got a jury way out of time. They put the question to the jury, and the jury didn't agree with them. Implicit in what I've said is that if you argue that's the panel, follows from the prior panel holding, then why is that a law of the case? Implicit in that is that that's a controlling question. I thought that, Judge Higginbotham, when I read the first opinion in this case, but if you read it really carefully, I think it's all about you have some fallback positions here that are legal positions on the lease. We don't think that was appropriate for summary judgment. That's really all the panel did. I read it too, but that's not the way it was taken on remand. I'm not sure of that. I'm not. Because if that were the case, if it were believed to resolve those issues, you wouldn't have had those four questions on the jury verdict form. Thank you, sir. Thank you. Thank you. Mr. Shack, you have a couple of time. Your Honor, Judge Higginbotham, in answering that last question, I would note that our side submitted a bench brief at the court's request at Supplemental Record 1433 that starts with, in all caps, NOVATION OF REARS OBLIGATION TO LEASE IS A LEGAL IMPOSSIBILITY BECAUSE THE OBLIGATION TO BE SUBSTITUTED WAS SUBJECT TO A SUSPENSIVE CONDITION WHICH WAS NEVER FULFILLED. And our side proposed a jury instruction to get into that, to the extent you want to argue we're going to get this question answered sub silentio by the jury in question number one. We proposed an instruction on what a suspensive condition does to an argument of NOVATION and that was rejected as well. The answer is the judge took all of this on as a legal question and ruled on it on the record in the district court. And the question which, Judge Higginson, you've nailed. So in that sense, clearly you preserved it, but you weren't saying there was a law of the case residue. Neither of you were arguing that the prior panel ruling had that impact. On the question of whether the NOVATION could legally occur regardless of intent, we're not arguing that. Frankly, the first panel said the wrong guy won. The first panel what? The wrong guy won in the district court. The first panel held that. The ruling in the district court had been on intent. And then there were a series of other backup defenses that they threw out that were all rejected. The panel opinion speaks for itself. The question whether this lease was mature is undisputed below. The question that this court is grappling with right now, at least the first question, comes in two parts. Judge Higginson, I think you've correctly bifurcated those points, which my friend did a very nice job of identifying when he was up here. There's two problems with this NOVATION argument. Let's be clear about what this is. This is an affirmative defense, and it's the last one they're left with to enforce ability of the lease. And it is that they insist on a condition going into their new obligation to us. That condition, you could argue whether it's whim or whether it's will and thus void under 1770 or frankly, that doesn't even matter. Assume that their whim or will is sufficient. It's a condition anyway. I mean, there's no getting around that. In the Tucker case and Litvinov, we think... Is it invalidating? That's the whole point. If it's a condition, fine, if it's not invalidating. If it's a condition, whether it's a suspensive condition, whether it's a condition, it doesn't matter. It's a condition. And the law in Louisiana is that a party asserting a NOVATION, and a NOVATION is not a favored argument. The law asserting a NOVATION, and I'm quoting now out of Tucker, a new conditional obligation does not fulfill the requirements for NOVATION in order to affect a NOVATION until the condition is fulfilled. Let's assume it wasn't subject to their will or will. The new obligation to pay us the $210,000 doesn't come into existence unless they decide to go forward and close on the property. Our side proposed a different format in which the NOVATION that they now argue on would not have been conditional. They rejected that. Right, but obviously, therefore, it was a highly negotiated position, and they rejected it, and you were willing to take on the condition. Absolutely. Okay, and then you say, but as a matter of law, that was something you couldn't take on. No, no. And NOVATE, even though we've got a jury verdict saying the intent was to NOVATE. Yes, but I accept the jury verdict. The simple answer here is the condition was still there because they wanted to be there, and it didn't get fulfilled. Maybe because your time's short, he stressed humble oil. Placid? No, not placid. Humble oil. On the question whether this is a whim? Yes. Your Honor, the person signing this document had to undertake some kind of an obligation in executing if it's going to be a valid document. And what they're saying is internal corporate approval is looking at exactly the same analysis that the person who signed the document did. Right? So to me, there's no change there. I'm going to confirm that I had the authority to execute in the first place. That is not a substitution of, I am giving up my right not to move to France. I'm not going to do anything unless my wife says I get to do something. But frankly, that's not, to be clear, not my best argument, not the one you need to write this case on, because I think it's not the one that would be most helpful to jurisprudence in any event. They put a condition in this agreement that said they weren't going to have to pay our client $210,000 unless they bought the property. They insisted on that being in there. They're the ones now having to argue novation to get away from the original agreement. They refused to perform. And once they've unequivocally refused to perform the rest of these legal arguments, I say they were rejected in the panel opinion. But even if they weren't, the rest of these legal arguments go away under Article 1772. They've rejected the contract. People don't have to perform it to the extent there's a condition that they could rely on. It's treated as fulfilled. Your Honors, I see that my time is up. If there are no further questions, I'll yield. All right. Thank you.